

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 30, 1992

Mr. Lawrence R. Jacobi, Jr., P.E.
General Manager
Texas Low-Level Radioactive
 Waste Disposal Authority
7701 North Lamar Blvd., Suite 300
Austin, Texas 78752

Opinion No. DM-101

Re: Whether the board of directors of the Texas Low-Level Radioactive Waste Disposal Authority may designate by rule for use as impact assistance allocation not less than ten percent of the planning and implementation fees assessed and deposited to the low-level waste fund and related questions   (RQ-267)

Dear Mr. Jacobi:

You have requested our interpretation of subchapter J, chapter 402 of the Health and Safety Code (the code), as it relates to impact assistance allocation and planning and implementation fees. Specifically, you ask the following three questions:

> (a)    Does the [Texas Low-Level Radioactive Waste Disposal Authority's] Board of Directors have the statutory authority to order by rule that not less than 10 percent of those planning and implementation fees assessed and deposited to the low-level waste fund be set aside or designated for impact assistance?

> (b)    If the answer to (a) is yes, when could such assistance funds be paid to affected political subdivisions?

> (c)    If the answer to (a) is yes, what are the available financial and budgetary mechanisms available to the Authority, the State Comptroller, and the State Treasury to set aside this money?

As we believe the Texas Low-Level Radioactive Waste Disposal Authority's (the authority) Board of Directors (the board) lacks statutory authority to designate, for use as impact assistance funds, an amount not less than ten percent of the planning and implementation fees assessed and deposited to the low-level waste fund, we do not reach your second and third questions.

The legislature created the authority to take jurisdiction over selecting, preparing, constructing, operating, maintaining, decommissioning, closing, and financing low-level waste[1] disposal sites in the state.   Health & Safety Code §§ 402.051, 402.052.  Prior to the seventy-second legislature, the code required the authority to raise, from fees the authority collected pursuant to subchapter J, enough funds to pay its expenses. Acts 1991, 72d Leg., ch. 804, § 5, at 2816 (former Health & Safety Code § 402.271, amended by Acts 1991, 72d Leg., 1st C.S., ch. 5, § 17.01).  One of the fees subchapter J authorized the authority to collect was a waste disposal fee from every person who delivered low-level waste to the authority for disposal. Acts 1989, 71st Leg., ch. 678, § 1, at 2778 (former Health & Safety Code § 402.272, amended by Acts 1991, 72d Leg., 1st C.S., ch. 3, § 5.01).  While the board was to set the waste disposal fee taking into consideration the volume of low-level waste delivered for disposal and the relative hazard each type of low-level waste delivered to the disposal presented,[2] id. (former Health & Safety Code § 402.272(b), amended by Acts 1991, 72d Leg., 1st C.S., ch. 3, § 5.01), the board had to adopt a waste disposal fee rate sufficient to meet the board's expenses, including an amount designated for use as impact assistance allocation. Id. (former Health & Safety Code § 402.273(a)(4), amended by Acts 1991, 72d Leg., ch. 804, § 6); see infra pp. 2-3 (describing impact assistance allocation).

The legislature required the authority to provide funds for impact assistance allocation because the legislature recognized that the construction and operation of

---

[1] "Low-level waste" means radioactive material that has a half-life of 35 years or less or fewer than 10 nanocuries per gram of transuranics, and may include radioactive material ... with a half-life of more than 35 years" if the Texas Department of Health has established special criteria for disposal of that waste.  Health & Safety Code § 402.003(7).

[2] In determining the relative hazard a certain type of low-level waste presents, the board must consider the radioactive, physical, and chemical properties of each type of low-level waste.  Health & Safety § 402.272(c).

a low-level waste disposal site in or adjacent to a political subdivision[3] would cause the affected subdivision to incur expenses for additional governmental services, public works projects, and planning. Accordingly, the impact assistance allocation ensures that funds are available for allocation to affected political subdivisions to compensate for impacts associated with the disposal site. Health & Safety Code §§ 402.031(a)(creating citizen's advisory council), 402.051; *see id.* §§ 402.252 - 402.254 (establishing procedures by which citizen's advisory council shall prepare recommendation for distribution of impact assistance allocation). The code directed the board to designate as the amount of money available for impact assistance allocation an amount not less than ten percent of the annual gross receipts from waste received at the disposal site and not more than $300,000 annually from each generator of low-level waste.[4] Acts 1989, 71st Leg., ch. 678, § 1, at 2778 (former Health & Safety Code § 402.273(b), amended by Acts 1991, 72d Leg., ch. 804, § 6).

In 1991 the seventy-second legislature amended several provisions of subchapter J. Pertinent to the questions you pose, during its first called session the legislature passed House Bill 11, section 17.02 of which authorizes the board to collect a new kind of fee: planning and implementation fees. Acts 1991, 72d Leg., 1st C.S., ch. 5, § 17.02 (codified at Health & Safety Code § 402.2721); *see also* Health & Safety Code § 402.272(a). The board is to collect planning and implementation fees from each person in this state (except health care providers and institutions of higher education) who is licensed to possess or use radioactive material or to own or operate a nuclear power plant in this state.[5] Health & Safety Code § 402.2721(a).

Previously, during the seventy-second legislature's regular session, the legislature had passed House Bill 1757. *See* H.B. 1757, Acts 1991, 72d Leg., ch. 804. House Bill 1757, among other things, created the low-level waste fund, an interest-

---

[3]A political subdivision, for purposes of subchapter J of chapter 402 of the Health and Safety Code, means a municipality, county, hospital district, school district, water district, or other political subdivision of this state. Health & Safety Code § 402.003(1).

[4]As we discuss later, the source of the funds used for impact assistance allocation is the low-level waste fund; the funds used for impact assistance allocation do not come directly from waste disposal fees. *See infra* pp. 3-4.

[5]Pursuant to the rulemaking authority provided in section 402.054 of the Health and Safety Code, on November 27, 1991, the board issued planning and implementation fees for this state's fiscal years 1992 and 1993. *See* Tex. Low-Level Radioactive Waste Disposal Auth., 16 Tex. Reg. 5718-5719 (1991), adopted 16 Tex. Reg. 7019 (1991) (codified at 31 T.A.C. §§ 450.1-450.4).

bearing fund in the state treasury into which the authority must deposit all money it receives unless the money statutorily is directed elsewhere. *Id.* § 7 (Health & Safety Code §§ 402.275(a)-(c)). The authority must deposit waste disposal fees to the credit of the low-level waste fund, Health & Safety Code § 402.275(c); the authority also must deposit planning and implementation fees into the low-level waste fund, except for a certain portion set by the code that the authority must use to reimburse the state's general revenue fund.[6] *Id.* § 402.2721(b)(4). The authority may use the monies in the low-level waste fund to pay any and all of its expenses, including the impact assistance allocation. *Id.* § 402.275(d).

The addition of planning and implementation fees to the monies the authority is authorized to receive and collect represents a new revenue source from which the authority can pay its expenses. *See id.* § 402.271. As the board must set waste disposal fees and planning and implementation fees in amounts sufficient to allow the board to reimburse itself, as closely as possible, for the present costs of administering, implementing, and planning the activities subchapter J authorizes, and to reimburse the state's general revenue fund as the code requires, *id.* § 402.272, the code creates an inverse relationship between the amount the authority must collect as waste disposal fees and the amount the authority must collect as planning and implementation fees.[7] Thus, the proportion of the authority's total expenses that the board must raise as waste disposal fees decreases as the proportion of total expenses the board raises through planning and implementation fees increases. You assert that, as a consequence, the amount of money the authority receives annually as waste disposal fees will decrease.

In all of the amendments made during 1991, the legislature did not make substantive changes to section 402.273(b) of the code, but merely renumbered it as

---

[6] During fiscal years 1992 and 1993, the board must deposit at least $15 million of the amount it collects from planning and implementation fees into the general revenue fund for reimbursement purposes. Health & Safety Code § 402.2721(b)(1), (4).

[7] In addition to planning and implementation fees and waste disposal fees, the authority may use the following revenues to pay its expenses: proceeds from the sale of bonds under subchapter K, chapter 402 of the Health and Safety Code; contributions from members of a low-level waste compact entered into pursuant to the Health and Safety Code section 402.219(c); surcharge rebates the United States Department of Energy made pursuant to Pub. L. No. 99-240; appropriations the state legislature made; and other receipts, fees, and interest earned in funds the authority has collected pursuant to subchapter J, Health and Safety Code, and deposited into the low-level waste fund. Health & Safety Code § 402.271(3) - (7). For purposes of this opinion, we only consider the relationship between planning and implementation fees and waste disposal fees.

section 402.273(c) and changed a reference to a subsection that was also renumbered to the appropriate cite. Section 402.273(c) reads as follows:

> The amount required by Subsection (a)(3) [to compensate for impacts associated with the disposal site] and designated by the board as available for impact assistance allocation under this chapter may not be less than 10 percent of the annual gross receipts from waste received at the disposal site and may not exceed $300,000 a year for each generator of low-level waste. However, during periods of unusual volume generation caused by unscheduled refueling, unplanned outages, special maintenance, or system decontamination and decommissioning, the amount payable by the affected generator may not exceed $500,000 a year for two consecutive years.

Planning and implementation fees are not "receipts from waste received at the disposal site." Thus, according to the plain language of section 402.273(c), the minimum amount available for impact assistance allocation remains contingent on the amount the authority receives from waste disposal fees. With the drop you foresee in the amount of waste disposal fees received, you are concerned that the amount of money available for designation as impact assistance allocation will drop correspondingly.[8] You contend that the legislature did not intend this result.

However, the language of section 402.273(c) is clear and unambiguous, and therefore will be enforced according to its words. *Central Educ. Agency v. Independent School Dist. of City of El Paso*, 254 S.W.2d 357, 360 (Tex. 1953). If the legislature had wished to amend subsection 402.273(c) to require the authority to designate for use as impact assistance allocation a certain percentage of the amount it receives from planning and implementation fees, it easily could have done so. Hence, we conclude that the legislature intended exactly what it said: that the minimum amount of money available for impact assistance allocation be a percentage, no less than ten percent, of the amount of money the authority receives from waste disposal fees *only*.

---

[8]As we will discuss later, your concern that the amount of money available for designation as impact assistance allocation will drop is not necessarily the case. The board may designate an amount greater than ten percent of the total waste disposal receipts, so long as the amount is less than $300,000 annually for each generator of low-level waste. Additionally, the board may use planning and implementation fees to pay the impact assistance allocation. *See generally infra* p. 6.

You ask, therefore, whether the board may order by rule that ten percent of the amount of money the authority receives from planning and implementation fees be designated as available for impact assistance allocation. The legislature granted to the board the power to "adopt rules, standards, and orders necessary to properly carry out this chapter and to protect the public health and safety and the environment from the authority's activities." Health & Safety Code § 402.054. Administrative agencies have only those powers that expressly are conferred by statute, together with those necessarily implied from powers and duties expressly given or imposed. Attorney General Opinions JM-1102 at 2 (citing *Cobra Oil & Gas Corp. v. Sadler*, 447 S.W.2d 887, 892 (Tex. 1968); *Stauffer v. City of San Antonio*, 344 S.W.2d 158, 160 (Tex. 1961)), JM-1017 (1989) at 3 (citing 2 TEX. JUR. 3d *Administrative Law* § 2 (1979)). An agency may not impose by rule "additional burdens, conditions, or restrictions in excess of or inconsistent with the statutory provisions." Attorney General Opinion JM-1017 at 3 (quoting *Kelly v. Industrial Accident Bd.*, 358 S.W.2d 874, 876-77 (Tex. Civ. App.–Austin 1962, writ ref'd)). On its face, subsection 402.273(c) of the code requires that the amount the board designates as available for impact assistance allocation be at least ten percent of the annual gross receipts from waste received at the disposal site, and less than $300,000 per year for each generator of low-level waste. Clearly, the board would contravene its authority if it were to designate as available for impact assistance allocation a percentage of the annual gross receipts from planning and implementation fees. Of course, the board may increase the amount available for impact assistance allocation by using a percentage greater than ten percent of the annual gross receipts from waste disposal fees, so long as the amount does not exceed $300,000 per year for each generator of low-level waste.[9] Health & Safety Code § 402.273(c).

We note that while the plain language of the code does not permit the board to use the amount of annual gross receipts from planning and implementation fees to determine the amount of funds available for impact assistance allocation, the board may use planning and implementation monies to pay the impact assistance allocation once the board has designated the percentage of waste disposal fees received that will be available for impact assistance. *See id.* §§ 402.271 (authorizing authority to pay its expenses from fees it collects pursuant to subchapter J, Health and Safety Code), 402.272(a) (requiring board to deposit waste disposal fees and planning and implementation fees into fund used to pay expenses of administering

---

[9]During periods of unusual volume generation caused by unscheduled refueling, unplanned outages, special maintenance, or system decontamination and decommissioning, the board may not exact from the affected generator of low-level waste an amount greater than $500,000 per year for two consecutive years. Health & Safety Code § 402.273(c).

low-level radioactivity waste disposal activities), 402.275(c) (requiring authority to deposit all monies it receives pursuant to chapter 402, Health and Safety Code, to credit of low-level waste fund), 402.275(d)(6)[10] (requiring authority to use money deposited into low-level waste fund for, *inter alia*, impact assistance funds for affected political subdivisions), 401.306(b) (requiring the Department of Health to deposit planning and implementation fees to credit of low-level waste fund).

As we conclude that the board may not order by rule that ten percent of the planning and implementation fees assessed and deposited to the low-level waste fund be designated for use as impact assistance allocation, we need not answer the remaining two questions you pose.

## SUMMARY

The board of directors of the Texas Low-Level Radioactive Waste Disposal Authority may not designate by rule for use as impact assistance allocation a percentage of the planning and implementation fees assessed and deposited to the low-level waste fund pursuant to subchapter J of chapter 402 of the Health and Safety Code.

Very truly yours,

DAN MORALES
Attorney General of Texas

---

[10]The seventy-second legislature amended section 402.275, Health and Safety Code, twice during its regular session. *See* Acts 1991, 72d Leg., ch. 804, § 7; *id.* ch. 14, § 148. As both amendments specify that the authority may use money in the low-level waste fund to pay impact assistance funds for affected political subdivisions, we need not discuss at this time whether the amendments harmonize or are irreconcilably repugnant. *See Shults v. State*, 696 S.W.2d 126, 131 (Tex. App.--Dallas 1985, writ ref'd n.r.e.) (quoting *Wright v. Broeter*, 196 S.W.2d 82, 85 (Tex. 1946) (stating rule that when construing acts passed during same legislative session, latter provision repeals former provision only if the latter provision expressly repeals former, or if provisions are irreconcilably repugnant)). The two amendments do number their subsections differently. In section 7 of chapter 804, the specification that money in the low-level waste fund may be used to pay impact assistance funds is numbered as Health and Safety Code section 402.275, subsection (d)(6); in section 148 of chapter 14, the same provision is numbered as Health and Safety Code section 402.275, subsection (d)(7). We use the numbering of chapter 804, section 7.

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kym Oltrogge
Assistant Attorney General